UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
MICHAEL STURDIVANT, *pro se*,　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Petitioner,　　　　　　　　　:　　**MEMORANDUM AND ORDER**
　　　　　　　　　　　　　　　　　　　　　　:
　　　　-against-　　　　　　　　　　　　　　:　　04-CV-5659 (DLI)
　　　　　　　　　　　　　　　　　　　　　　:
CHARLES W. BARKLEY, Superintendent, :
Cape Vincent Correctional Facility,　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Respondent.　　　　　　　　　:
---------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

　　　　Petitioner Michael Sturdivant ("petitioner") was convicted in the New York State Supreme Court, Queens County, after a trial by jury, of criminal possession of a controlled substance in the third degree (N.Y. Penal Law § 220.16[1]), and criminal possession of a controlled substance in the fifth degree (N.Y. Penal Law § 220.06[5]), on September 27, 2002. Prior to sentencing, petitioner moved to set aside the verdict on the ground of juror misconduct, pursuant to N.Y. Crim. Proc. Law § 330.30(2). On November 6, 2002, the trial court denied the motion and sentenced petitioner to concurrent prison sentences of four and one-half to nine years for the third degree conviction, and two to four years for the fifth degree conviction.

　　　　The Appellate Division of the New York State Supreme Court, Second Department, affirmed the judgment on April 26, 2004. *People v. Sturdivant*, 6 A.D.3d 733, 775 N.Y.S.2d 535 (2d Dep't 2004). On June 30, 2004, the New York Court of Appeals denied petitioner's leave to appeal. *People v. Sturdivant*, 3 N.Y.3d 648, 782 N.Y.S.2d 419 (2004).

　　　　On June 29, 2005, after filing the instant petition, petitioner filed a motion *pro se* to vacate

judgment, pursuant to N.Y. Crim. Proc. Law § 440.10, alleging that: (1) petitioner's trial counsel "was guilty of ineffective assistance of counsel and legal malpractice"; (2) the district attorney "is in violation of the State Administrative Procedure Act and has committed administrative and investigatory abuses and has not performed his purely ministerial duties as mandated by State Law"; and (3) the trial court judge "did not uphold his Article VI duty to uphold the Constitution of the United States of America and that he is guilty of Breach of Duty, Breach of Obligation, Breach of Contract, and the violation of the New York State Constitution." (Pet'r § 440.10 Mot. to Vacate J. at 1). On August 19, 2005, the Queens County Supreme Court denied petitioner's motion. *People v. Sturdivant*, No. N10159-2002 (N.Y. Sup. Ct. Aug. 19, 2005) (Blumenfeld, J.). Petitioner did not seek leave to appeal the decision.

Petitioner filed the instant petition for a writ of habeas corpus *pro se*, pursuant to 28 U.S.C. § 2254, on August 27, 2004, in the United States District Court for the Southern District of New York. By order dated December 2, 2004, the petition was transferred to the United States District Court for the Eastern District of New York. Petitioner challenges his conviction on the grounds that (1) the Appellate Division failed to rule on an issue concerning an experiment by jurors that deprived him of his right to confront witnesses and his right to be present, and (2) the prosecution withheld potentially exculpatory DNA evidence. In his reply brief, petitioner further challenges his conviction on the ground that he was denied effective assistance of counsel because trial counsel did not present witnesses or petition the court to submit DNA evidence. For the reasons set forth below, the petition is denied in its entirety.[1]

---

[1] After serving time in prison, petitioner was released on parole. However, on January 3, 2007, petitioner was taken back into custody for a parole violation.

## Background

At approximately 6:15 a.m. on February 15, 2002, Officer Patrick Corcoran, assigned to the Housing Bureau of the New York City Police Department, was patrolling the roof of the Queensbridge Houses, located at 40-03 12th Street, Queens County. (R. at 485-87.)[2] Officer Corcoran noticed petitioner standing in front of the building below. (R. at 488.) Over the course of about five minutes, he observed two different individuals approach petitioner, appear to shake hands with petitioner, and then walk away from petitioner. (R. at 488-89.) In order to get a better view, Officer Corcoran proceeded to the lobby of the building, where he observed petitioner through a window in the lobby door. (R. at 489.) Officer Corcoran saw an unidentified male approach petitioner and hand him what appeared to be money, in exchange for a small object. (R. at 490.) Officer Corcoran then left the lobby, and as he approached petitioner, petitioner started to walk away. (*Id*.) Officer Corcoran ordered petitioner to stop and put his hands on a nearby fence. (*Id*.) As petitioner put his hands on the fence, he spit a bag out of his mouth and onto the ground. (R. at 491-92.) After arresting petitioner, Officer Corcoran picked up the bag and placed it in a narcotics envelope. (R. at 492.) Officer Corcoran then placed the narcotics envelope in the console of the police van in which he transported petitioner to the police station. (R. at 493.)

Upon arriving at the police station, Officer Corcoran turned over custody of petitioner and the narcotics envelope to the desk sergeant, Sergeant Loria. (R. at 493-94, 549.) Sergeant Loria took the bags of cocaine out of the narcotics envelope and placed them inside a larger narcotics envelope. (R. at 494.) After watching Sergeant Loria seal the envelope, Officer Corcoran wrote his name, shield number, precinct number, and date on the larger envelope. (R. at 494, 508-9, 548.) Officer

---

[2]Page references preceded by "R" refer to the minutes of the trial.

3

Corcoran advised Sergeant Loria that he had witnessed petitioner spit the bags of cocaine from his mouth. ( R. at 548-49.)

Shaker Elsherbini, a chemist with the New York City Police Department, received the sealed narcotics envelope from the evidence clerk inside the police laboratory. (R. at 566-67.) After conducting numerous tests on the powdery substance inside the bags in the narcotics envelope, Mr. Elsherbini determined that it contained cocaine. (R. at 579-583.) At trial, it was revealed that the outer bag petitioner spit out of his mouth was a blue or bluish-black color and the eleven smaller bags of cocaine inside were made of clear plastic bags. However, when Officer Corcoran vouchered the bags, he wrote down that the color of the outer bag was clear. (R. at 541-43, 550-55.) At trial, Officer Corcoran testified that the color description he gave of the outer bag on the voucher form was a typo, and that the bags of cocaine in evidence were the same as those he recovered from petitioner. (R. at 512-13, 556.)

After the jury verdict, defense counsel and two assistant district attorneys interviewed two members of the jury. (Welkes Affirm. at 3-4.)[3] One juror indicated that a blue plastic bag from the trash can in the jury room had been used to help resolve the discrepancy between the color of the bags of cocaine in evidence and the color description Officer Corcoran had used on the standard voucher form. (*Id*.) Based on this conversation, petitioner moved to set aside the verdict, pursuant to N.Y. Crim. Proc. Law § 330.30(2)[4], alleging juror misconduct. On November 6, 2002, the trial

---

[3]"Welkes Affirm." refers to the Affirmation of Nathaniel Welkes, Esq. in Support of Defendant's Motion to Set Aside the Verdict dated October 4, 2002.

[4]N.Y. Crim. Proc. Law § 330.30 provides:
> At any time after rendition of a verdict of guilty and before sentencing, the court may, upon motion of the defendant, set aside or modify the verdict or any part thereof upon the following grounds: . . . (2) That during the trial

court denied petitioner's motion. The court stated that petitioner failed to show that there had been an improper influence in the jury room or that petitioner had been prejudiced. Specifically, the court stated that petitioner had "failed to show that the use of the blue plastic was 'not within the common ken of juror experience and knowledge.'" *People v. Sturdivant*, No. QN10159/2002, at *3 (N.Y. Sup. Ct. Nov. 6, 2002) (Blumenfeld, J.) The court further stated that the jurors had merely made a point as to how people describe color, which did not alter the fact that the actual items in evidence were in the jury room with them. The trial court then sentenced petitioner to concurrent prison sentences of four and one-half to nine years for criminal possession of a controlled substance in the third degree, and two to four years for criminal possession of a controlled substance in the fifth degree.

On appeal from his judgment of conviction, petitioner raised two issues: (1) the evidence was legally insufficient to support his conviction beyond a reasonable doubt because the prosecution failed to prove that petitioner actually possessed the drugs that were recovered; and (2) petitioner was deprived of his due process right to a fair trial and the right to confrontation by the jurors' use of a blue plastic bag to conduct an experiment in the jury room during deliberations. In affirming petitioner's judgment of conviction, the Appellate Division found the evidence legally sufficient to establish petitioner's guilt beyond a reasonable doubt, and was satisfied that the guilty verdict was not against the weight of the evidence. The court further found that:

> [T]he Supreme Court correctly denied the defendant's motion to set aside the verdict pursuant to CPL 330.30(2) on the ground of juror misconduct. The defendant failed to establish that the jurors conducted an experiment not within the common ken of juror experience and knowledge concerning a material issue in the case, or that they there occurred, out of the presence of the court, improper conduct by a juror, or improper conduct by another person in relation to a juror, which may have affected a substantial right of the defendant and which was not known to the defendant prior to the rendition of the verdict . . . .

5

in fact conducted an experiment.

*Sturdivant*, 6 A.D.3d at 734. (citations omitted). The Court of Appeals denied petitioner's leave to further appeal his criminal conviction. *Sturdivant*, 3 N.Y.3d at 648.

On June 29, 2005, petitioner moved *pro se* in the Queens County Supreme Court to vacate judgment pursuant to N. Y. Crim. Proc. Law § 440.10. Petitioner claimed that: (1) petitioner's trial counsel "was guilty of ineffective assistance of counsel and legal malpractice"; (2) the district attorney "is in violation of the State Administrative Procedure Act and has committed administrative and investigatory abuses and has not performed his purely ministerial duties as mandated by State Law"; and (3) the trial court judge "did not uphold his Article VI duty to uphold the Constitution of the United States of America and that he is guilty of Breach of Duty, Breach of Obligation, Breach of Contract, and the violation of the New York State Constitution." (Pet'r § 440.10 Mot. to Vacate J. at 1). The Supreme Court denied petitioner's motion finding "[t]he part of the defendant's motion that is based on facts that appear on the record must be denied pursuant to CPL 440.10(2)(c). The remainder of the defendant's motion is based on conclusory allegations and lacks any evidence to support the conclusions and as such they are denied." *Sturdivant*, No. N10159-2002, at *1. The Supreme Court granted petitioner leave to renew his motion when he is able to present facts to support his allegations. *Id*. at 2. However, petitioner has neither renewed his motion nor applied for leave to appeal the denial of his § 440.10 motion.

**Discussion**

**I.      Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

An application for a writ of habeas corpus on behalf of a person in custody pursuant

> to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in State court proceedings.

28 U.S.C. § 2254(d). A state court "adjudicates" a petitioner's claim "on the merits" when it "dispose[s] of the petitioner's federal claim on substantive grounds, and reduce[s] that disposition to judgment. No further articulation of its rationale or elucidation of its reasoning process is required." *Brown v. Artuz,* 283 F.3d 492, 498 (2d Cir. 2002) (quoting *Aparicio v. Artuz,* 269 F.3d 78, 93-94 (2d Cir. 2001)). A decision is "contrary to" clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 413, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). A state court's decision involves an "unreasonable application of" clearly established federal law when "the state court identifies the correct governing principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. AEDPA also specifies the applicable standard for federal review of state factual findings: a petitioner must demonstrate that a decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In habeas proceedings, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). It is the petitioner's burden to rebut the presumption of correctness "by clear and convincing evidence." *Id*.

7

## II.     Exhaustion of Remedies in State Court

Before a petition for a writ of habeas corpus may be granted, the petitioner must have "exhausted the remedies available in the courts of the State."[5] 28 U.S.C. § 2254(b)(1)(A). This requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). A claim is considered exhausted where the petitioner has "fairly presented" to the state court "both the factual and the legal premises of the claim he asserts in federal court." *Daye v. Attorney General of New York*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc).

Respondent argues that petitioner failed to exhaust his state court remedies with respect to the ineffective assistance of trial counsel claim and the claim that the prosecution withheld potentially exculpatory DNA evidence. Petitioner raised both claims in his motion to vacate judgment, pursuant to N.Y. Crim. Proc. Law § 440.10. The Queens County Supreme Court denied petitioner's motion on August 19, 2005. *Sturdivant*, No. N10159-2002, at *2. However, petitioner failed to seek leave to appeal the denial, as authorized by N.Y. Crim. Proc. Law § 450.15.[6]

---

[5] The Antiterrorism and Effective Death Penalty Act of 1996 provides exceptions to the exhaustion requirement where "there is an absence of available State corrective process" or where "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B)(i)–(ii). However, these circumstances are not present in the instant petition.

[6]N.Y. Crim. Proc. Law § 450.15 provides:
> If an appeal by defendant is not authorized as of right pursuant to section 450.10, the defendant may appeal from the following orders of a criminal court, provided that a certificate granting leave to appeal is issued pursuant to section 460.15: (1) An order denying a motion, made pursuant to section 440.10, to vacate a judgment other than one including a sentence of death.

8

Therefore, petitioner's ineffective assistance of trial counsel claim and his claim that the prosecution withheld potentially exculpatory DNA evidence remain unexhausted. *See Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir. 1990) (holding that in order to properly exhaust claims raised in an unsuccessful § 440.10 motion, a habeas petitioner must seek leave to appeal the denial of the motion to the Appellate Division)

The exhaustion issue may be addressed in one of three ways: (1) outright dismissal of the petition without prejudice, pursuant to *Rose v. Lundy,* 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982); (2) stay of the petition for a reasonable amount of time to enable petitioner to present his claims to the state courts and to return to federal court after exhaustion, pursuant to *Zarvela v. Artuz,* 254 F.3d 374 (2d Cir. 2001); or (3) outright denial of the petition based on the absence of any merit, pursuant to 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). With respect to staying the petition to allow petitioner to exhaust his state remedies, the Supreme Court has cautioned:

> [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.

*Rhines v. Weber*, 544 U.S. 269, 277, 125 S. Ct. 1528, 161 L. Ed. 2d 440 (2005). Indeed, as set forth in detail below, petitioner's claims of ineffective assistance of trial counsel, and that the prosecution withheld potentially exculpatory DNA evidence, are meritless.

9

## A. The Prosecution's Failure to Conduct DNA Testing

Petitioner argues that his writ of habeas corpus should be granted because the prosecution "withheld requested evidence that could have helped [his] case." In essence, petitioner appears to be arguing that the prosecution's failure to conduct DNA testing on the bags of cocaine in evidence constituted a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

Under *Brady*, "[t]o the extent that the prosecutor knows of material evidence favorable to the defendant in a criminal prosecution, the government has a due process obligation to disclose that evidence to the defendant." *U.S. v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998). However, the prosecution is not required to disclose evidence it does not possess or of which it is not aware. *Smith v. Edwards*, No. 98 Civ. 7962, 2000 WL 709005, at *6 (S.D.N.Y. May 31, 2000). Moreover, "there is no due process requirement that the government use any particular investigatory tool, including quantitative testing." *Id.* (citing *Arizona v. Youngblood*, 488 U.S. 51, 58-59, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988)). In *Smith v. Edwards*, after being convicted of rape, sodomy, assault, and unlawful imprisonment, the petitioner filed a petition for a writ of habeas corpus claiming, among other things, that the prosecution had an obligation under *Brady* to conduct DNA testing on semen samples found at the scene and on the victim. The court held that because petitioner did not contend that any exculpatory DNA evidence was within the prosecutor's possession, "the fact that he couches the government's failure to perform DNA testing in terms of *Brady* does not convert a legitimate prosecutorial choice into a constitutional violation." *Id.* Likewise, in the instant action, Sturdivant does not claim that the prosecution possessed exculpatory DNA. Moreover, the prosecution had no obligation to perform any additional forensics tests, such as DNA testing, on the bags of cocaine in evidence.

Additionally, *Brady* may not be invoked when defense counsel knew of the existence of the evidence, which was equally available to defense counsel, but chose not to pursue the matter. *See U.S. v. Zagari*, 111 F.3d 307, 320 (2d Cir. 1997); *see also Smith,* 2000 WL 709005, at *6 ("The rationale underlying *Brady* is that the defendant should not be denied access to exculpatory evidence only known to the government") (citing *U.S. v. Zackson*, 6 F.3d 911, 918 (2d Cir. 1993). It is clear from the record that petitioner's defense counsel had knowledge of the bags of cocaine in evidence because the lack of forensic testing was brought out on cross-examination. (R. at 542-3, 627-8). Therefore, defense counsel apparently made a strategic choice not to request DNA testing as a means of garnishing potentially exculpatory evidence.

Accordingly, petitioner's *Brady* claim is without merit.

**B.      Ineffective Assistance of Counsel**

Petitioner next claims a violation of his Sixth Amendment right to effective assistance of counsel. Petitioner did not raise this claim in the instant petition. However, in his reply brief, petitioner argues that he was denied effective assistance because defense counsel "did not present any witnesses or petition the Court for the ability to submit DNA evidence." (Pet'r Reply Br. ¶ 14.) As a result, respondent has not had an opportunity to respond to this claim. In any event, petitioner's claim is meritless.

*Strickland v. Washington* sets forth the standard for ineffective assistance of counsel. 466 U.S. 668, 690-91, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prevail under *Strickland*, a petitioner must show that counsel's representation "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Self-serving conclusory allegations to this effect

are insufficient to establish ineffective assistance of counsel. *U.S. v. Torres,* 129 F.3d 710, 715-17 (2d Cir. 1997); *U.S. v. Gonzalez,* 970 F.2d 1095, 1099-1101 (2d Cir. 1992). Rather, counsel is "strongly presumed" to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment. *Strickland,* 466 U.S. at 689. "Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690.

Petitioner first contends that defense counsel was ineffective for failing to present any witnesses. However, petitioner gives no indication as to which witnesses counsel should have presented, much less how any of these unidentified individuals would have changed the result of the proceeding. As such, petitioner's self-serving and conclusory allegation that defense counsel failed to present witnesses is insufficient to establish ineffective assistance of counsel. *See Rosenberger v. U.S.,* 133 Fed. Appx. 799, 801 (2d Cir. 2005); *see also Torres v. Stinson,* No. 97 Civ. 5310, 2000 WL 1919916, at *5 (E.D.N.Y. Dec. 29, 2000) ("A barebones assertion by a defendant that his counsel failed to inform him of his rights is insufficient to establish an ineffective assistance of counsel claim under *Strickland*"); *Madarikan v. U.S.,* No. 95 Civ. 2052, 1997 WL 597085, at *1 (E.D.N.Y. Sept. 24, 1997) (denying ineffective assistance claim based on failure to investigate or interview witnesses; petitioner's "allegations of ineffective assistance are conclusory, and give no indication as to what exculpatory evidence may have been revealed by an investigation.").

Furthermore, defense counsel was not deficient in failing to petition the court to submit DNA evidence. It is clear from the record that defense counsel was aware that DNA testing had not been conducted on the bags of cocaine. Therefore, given the testimonies of Officer Corcoran that he had witnessed petitioner spit the bags of cocaine out of his mouth and onto the ground, and Mr.

Elsherbini that the powdery substance contained in the bags inside the sealed narcotics envelope he had received from the evidence clerk inside the police laboratory contained cocaine, defense counsel's strategic decision not to seek DNA testing on the bags of cocaine was both reasonable and proper given that it was likely that the testing would have revealed adverse evidence. *See Johnson v. New York*, No. 02 Civ. 3752, 2003 WL 23198785, at *15 (E.D.N.Y. Nov. 5, 2003). It is not the province of this court to second-guess defense counsel's strategic choices.

Thus, petitioner's ineffective assistance of counsel claim is denied as meritless.

### III. Juror Misconduct

Petitioner's final claim is a violation of his Sixth Amendment rights to confront witnesses and to be present. Specifically, petitioner alleges that the jury conducted an improper experiment during deliberations by comparing the color of a blue plastic bag found in the trash can of the jury room with the color of the bags of cocaine in evidence, which the jury had with them in the room at the time. To the extent petitioner is now claiming that the Appellate Division failed to rule on this issue, petitioner is incorrect because, in affirming petitioner's judgment of conviction, the Appellate Division found that:

> [T]he Supreme Court correctly denied the defendant's motion to set aside the verdict pursuant to CPL 330.30(2) on the ground of juror misconduct. The defendant failed to establish that the jurors conducted an experiment not within the common ken of juror experience and knowledge concerning a material issue in the case, or that they in fact conducted an experiment.

*Sturdivant*, 6 A.D.3d at 734. (citations omitted). Respondent contends that petitioner is not entitled to habeas corpus relief on this claim because the Appellate Division's conclusion was neither contrary to, nor involved an unreasonable application of, clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1). The court agrees.

13

The Sixth Amendment to the Constitution guarantees a criminal defendant the right to a trial by an impartial jury. *See* U.S. Const. amend VI. In evaluating the nature and extent of this right, the Supreme Court has stated: "In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." *Turner v. Louisiana,* 379 U.S. 466, 472-73, 85 S. Ct. 546, 13 L. Ed. 2d 424 (1965). The corollary of this notion is that "facts that relate to a defendant's guilt, but which are not admitted as evidence during trial, should not be exposed to a jury during deliberations. Any other conclusion would permit a jury to consider incriminating evidence that has not been subject to confrontation or cross-examination, in direct contravention of the Sixth Amendment's guarantees." *U.S. v. Simmons*, 923 F.2d 934, 943 (2d Cir. 1991) (citing *Lacy v. Gardino,* 791 F.2d 980, 983 (1st Cir. 1986), *cert. denied,* 479 U.S. 888, 107 S. Ct. 284, 93 L. Ed. 2d 259 (1986); *Gibson v. Clanon,* 633 F.2d 851, 854 (9th Cir. 1980), *cert. denied,* 450 U.S. 1035, 101 S. Ct. 1749, 68 L. Ed. 2d 231 (1981)).

It has generally been held within the Second Circuit that the consideration of facts not in evidence by a jury can give rise to a constitutional claim. *See e.g., Simmons,* 923 F.2d at 943 (noting that the Sixth Amendment protects against "extra-record infiltration of jury deliberations"); *Bulger v. McClay*, 575 F.2d 407, 411-12 (2d Cir. 1978), *cert. denied,* 439 U.S. 915, 99 S. Ct. 290, 58 L. Ed. 2d 263 (1978) (affirming grant of petition for writ of habeas corpus where information about the defendant's address, though absent from the trial record, coupled with the fact of an intervening newspaper article which reported the address, were sufficient to establish that the address information was impermissibly imparted to the jury and discussed by its members); *Owen v. McMann,* 435 F.2d

813, 818 (2d Cir. 1970), *cert. denied,* 402 U.S. 906, 91 S. Ct. 1373, 28 L. Ed. 2d 646 (1971) (jurors' consideration of extra-records facts about defendant's troubled background as related by other jurors denied defendant due process). Even where extra-record information is considered by a jury, however, habeas relief is not warranted unless the violation was prejudicial. *See Simmons,* 923 F.2d at 944.

Although the Second Circuit has yet to address the precise issue of whether a jury experiment violates a defendant's constitutional rights, a review of the case law suggests that jurors must be given sufficient latitude during deliberations to permit them to use their common experience and illustrations in reaching a verdict. For instance, "where the jurors are not informed of extra-record facts but merely observe an experiment in the jury room 'testing' certain of the record evidence, their verdict is not constitutionally defective." *Simon v. Kuhlman*, 549 F. Supp. 1202, 1206 (S.D.N.Y. 1982) (emphasis in original). In *Simon,* the court held that, although a jury experiment in which one juror placed a nylon stocking, such as that worn by the perpetrator of the offense, over his head to enable the other jurors to determine whether it was possible to recognize a person's features through such a mask was improper, it was not so prejudicial as to require a new trial. *Id*. at 1205-08. Similarly, the Fourth, Sixth, Seventh and Ninth Circuits have found that experiments conducted in the jury room did not create a sufficient probability of prejudice to require a new trial. *See e.g., Bogle v. Galaza,* 38 Fed. Appx. 437, 438 (9th Cir. 2002) (holding that jury's action in considering the result of its attempt to insert a key into the lock of a safe, both items being in evidence, "did not constitute an impermissible jury experiment or the consideration of extrinsic evidence, because a jury is permitted to examine all pieces of evidence carefully, . . . and to reenact the crime using the evidence before it"); *Kurina v. Thieret*, 853 F.2d 1409, 1413-14 (7th Cir. 1988) (finding that the jurors'

construction of a cardboard knife to ascertain whether the murder victims' wounds could have been inflicted by a left-handed person was a "simple experiment based solely on evidence introduced at trial" that the defendant, as a left-handed person, could not have been the murderer because the victims had been stabbed by a right-handed assailant, and as such, does not violate a defendant's constitutional rights); *U.S. v. Avery,* 717 F.2d 1020, 1026 (6th Cir. 1983) (holding that defendant was not deprived of a fair trial where, in testing defense theory, jury used physical evidence to recreate defendant's actions, because jury was not exposed to any extraneous materials during their deliberations); *Miller v. Harvey,* 566 F.2d 879, 880-81 (4th Cir. 1977) (affirming the denial of a writ of habeas corpus challenging the petitioner's conviction for rape because the jury conducted an experiment where one female juror bit the arm of another juror in an effort to compare the resulting bruise to photographs of the petitioner at the time of his arrest which showed bruises on his arm allegedly inflicted by his victim).

The experiment that allegedly occurred in this case merely involved a comparison of the color of an item already in evidence with the color of a plastic bag from the trash can in the jury room. The jury, therefore, did not go beyond the trial evidence by conducting an investigation outside the jury room to discover facts beyond the record, nor did the jury accept an unverifiable report from one of its members concerning the conditions and results of the experiment. Rather, the jurors heard the testimony, including cross-examination, of Officer Corcoran who stated that the color of the outer bag that petitioner spit out was a blue or bluish-black, which matched the color of the bags in evidence, and that the color description he had entered on to the standard voucher form was a typo. The experiment therefore was not improper and did not implicate petitioner's constitutional rights.

In any event, even if it were determined that the experiment somehow introduced extrinsic

16

evidence into the deliberations, petitioner would not be entitled to relief unless he could demonstrate that the introduction of such evidence was prejudicial. The court here cannot conclude that the jury's comparison of the color of the trash bag with the color of the bags of cocaine in evidence was prejudicial in light of the strong evidence that the bags of cocaine in evidence were the bags that petitioner spit out of his mouth, including the testimony of an eye-witness, Officer Corcoran, who saw petitioner spit a bag containing eleven smaller bags onto the ground and then safeguarded and transported the bag back to police headquarters, placing it in a sealed narcotics envelope, and the testimony of Mr. Elsherbini that he received the sealed narcotics bag from the evidence clerk in the police laboratory, chemically-tested the powdery substance, and determined that the bags contained cocaine.

Accordingly, the jury experiment involved here did not create such a possibility of prejudice as to amount to a denial of due process.

**Conclusion**

For the reasons set forth above, Michael Sturdivant's petition for a writ of habeas corpus is denied in its entirety. Petitioner is further denied a certificate of appealability as he fails to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see* FED. R. APP. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003); *Luciadore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000).

SO ORDERED.

DATED:     Brooklyn, New York
              July 24, 2007

                                            _____/s/_____
                                              DORA L. IRIZARRY
                                           United States District Judge